Case No. 15-55486

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

PRESERVATION OF LOS OLIVOS, *et al.*,
Plaintiffs - Appellants,

v.

UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*,
Defendants - Appellees,

and

THE SANTA YNEZ BAND OF CHUMASH MISSION INDIANS
Intervenor - Appellee.

*On Appeal from the U.S. District Court for the Central District of
California, Civil Case Number 06-01502-JVS-SHx*

**RESPONSE BRIEF FOR THE DEFENDANTS-APPELLEES**

<div style="margin-left:50%;">

JOHN C. CRUDEN
 Assistant Attorney General
 Environment & Natural Res. Div.

</div>

*Of Counsel:*
JENNIFER TURNER
REBECCA ROSS
 U.S. Department of the Interior
 Office of the Solicitor
 Washington, DC

JUDITH RABINOWITZ
BRIAN C. TOTH
 Attorneys
 Environment & Natural Res. Div.
 U.S. Department of Justice
 P.O. Box 7415
 Washington, DC 20044
 (202) 305-0639
 brian.toth@usdoj.gov

# TABLE OF CONTENTS

**PAGE**

JURISDICTIONAL STATEMENT ............................................................ 1

ISSUES PRESENTED ............................................................................ 2

STATEMENT OF FACTS ....................................................................... 3

    A.    The Land-into-Trust Decision and the Administrative
           Appeal ......................................................................................... 3

    B.    POLO's Lawsuit and the Summary Judgment Order ............ 8

    C.    Administrative Proceedings on Remand to the Appeals
           Board ........................................................................................ 10

    D.    Post-remand Proceedings in the District Court ................... 12

STANDARD OF REVIEW ..................................................................... 15

SUMMARY OF ARGUMENT ................................................................ 16

ARGUMENT ......................................................................................... 18

    I.    The Court lacks Article III jurisdiction because the only
          properly pleaded claims before the district court are now
          moot ......................................................................................... 18

        A.    The Board's old decision has been vacated and
             superseded ......................................................................... 18

        B.    The Bureau's land-into-trust decision cannot be
             challenged on the existing complaint because it is
             not final agency action ..................................................... 21

i

C.   This case does not fit an exception to mootness
     doctrine.........................................................................26

II.   The Court lacks appellate jurisdiction because POLO is not
      aggrieved by the district court's order terminating the
      case...............................................................................27

III.  If the Court has jurisdiction to resolve this appeal, the
      district court did not abuse its discretion by refusing to
      reopen the case for further litigation .....................................34

IV.   The Court should not address POLO's remaining
      arguments.....................................................................45

CONCLUSION .........................................................................48

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**CASES:**

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth,*
  300 U.S. 227 (1937) ........................................................ 35

*Already, LLC v. Nike, Inc.,*
  133 S. Ct. 721 (2013) ................................................. 19, 26

*Alsea Valley All. v. Dep't of Commerce,*
  358 F.3d 1181 (9th Cir. 2004) ............................... 25, 37, 40

*Alto v. Black,*
  738 F.3d 1111 (9th Cir. 2013) ........................................ 33

*Aluminum Co. of America v. Bonneville Power Admin.,*
  56 F.3d 1075 (9th Cir. 1995) .................................... 20, 26

*Ariz. State Land Dep't v. W. Regional Director,*
  *Bureau of Indian Affairs,*
  43 IBIA 158 (2006) ......................................................... 37

*Barnett v. U.S. Air, Inc.,*
  228 F.3d 1105 (9th Cir. 2000) (*en banc*) ........................ 15

*Bennett v. Spear,*
  520 U.S. 154 (1997) ................................................. 22, 23

*Big Lagoon Rancheria v. California,*
  789 F.3d 947 (9th Cir. 2015) .................................... 21, 30

*Bromfield v. Mukasey,*
  543 F.3d 1071 (9th Cir. 2008) ........................................ 36

*Bryant v. Tech. Research Co.,*
  654 F.2d 1337 (9th Cir. 1981) .................................. 28, 33

iii

*Carcieri v. Salazar,*
    555 U.S. 379, 129 S. Ct. 1058 (2009) ...................................... 10, 11

*Casey v. Albertson's Inc,*
    362 F.3d 1254 (9th Cir. 2004) ......................................... 39

*Chromalloy Am. Corp. v. Fischmann,*
    716 F.2d 683 (9th Cir. 1983) ...................................... 28, 33

*City of Eagle Butte v. Aberdeen Area Director,*
    17 IBIA 192 (1989) ......................................................... 7

*Cooter & Gell v. Hartmarx Corp.,*
    496 U.S. 384 (1990) ...................................................... 44

*Cty. of Los Angeles v. Shalala,*
    192 F.3d 1005 (D.C. Cir. 1999) ..................................... 38

*DBSI/TRI IV Ltd. P'ship v. United States,*
    465 F.3d 1031 (9th Cir. 2006) ......................................... 19

*Demery v. Arpaio,*
    378 F.3d 1020 (9th Cir. 2004) ....................................... 15

*Dep't of Transp. v. Pub. Citizen,*
    541 U.S. 752 (2004) .................................................... 6, 7

*Detrich v. Ryan,*
    740 F.3d 1237(9th Cir. 2013) (*en banc*) ......................... 45

*Forney v. Apfel,*
    524 U.S. 266 (1988) .................................................... 38

*Genesis Healthcare Corp. v. Symczyk,*
    133 S. Ct. 1523 (2013) ................................................. 19

*Grand Canyon Trust v. U.S. Bureau of Reclamation,*
    691 F.3d 1008 (9th Cir. 2012) ....................................... 20

*Haskell v. Harris,*
745 F.3d 1269 (9th Cir. 2014) ........................................ 45

*Idaho Farm Bureau Fed'n v. Babbitt,*
58 F.3d 1392 (9th Cir. 1995) ......................................... 32

*Insur. Co. of N. Am. v. Moore,*
783 F.2d 1326 (9th Cir. 1986) ............................. 15, 42, 46

*K.C. ex rel. Erica C. v. Torlakson,*
762 F.3d 963 (9th Cir. 2014) ........................................ 44

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak,*
132 S. Ct. 2199 (2012) ........................................ 21, 31, 32

*Morton v. Mancari,*
417 U.S. 535 (1974) ..................................................... 4

*Murphy v. Hunt,*
455 U.S. 478 (1982) ..................................................... 19

*NAACP v. U.S. Sugar Corp.,*
84 F.3d 1432 (D.C. Cir. 1996) ....................................... 38

*No More Slots v. Pac. Regional Dir., Bureau of Indian Affairs,*
56 IBIA 233 (2013) ............................................ 12, 29, 30

*389 Orange St. Partners v. Arnold,*
179 F.3d 656 (9th Cir. 1999) ................................... 42, 46

*Parr v. United States,*
351 U.S. 513 (1956) ............................................... 28, 33

*Planned Parenthood of S. Ariz. v. Neely,*
130 F.3d 400 (9th Cir. 1997) ............................... 18, 39, 43

*Preservation of Los Olivos v. v. U.S. Dep't of the Interior,*
635 F. Supp. 2d 1076 (C.D. Cal. 2008) ....................... 9, 36

*Preservation of Los Olivos v. Pacific Regional Director,*
    *Bureau of Indian Affairs,*
    45 IBIA 98 (June 29, 2007) ............................................................. 8

*Preservation of Los Olivos v. Pacific Regional Director,*
    *Bureau of Indian Affairs,*
    58 IBIA 278 (June 3, 2014) ........................................... 12, 14, 15, 20

*Protectmarriage.com-Yes on 8 v. Bowen,*
    752 F.3d 827 (9th Cir. 2014) ........................................................ 26

*Robertson v. Methow Valley Citizens Council,*
    490 U.S. 332 (1989) ...................................................................... 7

*Santa Ynez Valley Concerned Citizens v. Pacific Regional Director,*
    *Bureau of Indian Affairs,*
    42 IBIA 189 (2006) .................................................................. 7, 8

*Shelbourn v. Acting Great Plains Regional Director,*
    *Bureau of Indian Affairs,*
    54 IBIA 75 (2011) ........................................................................ 36

*Shirk v. U.S. ex rel. Dep't of Interior,*
    773 F.3d 999 (9th Cir. 2014) ......................................................... 45

*Sinochem Intl. Co., Ltd. v. Malaysia Intl. Shipping Corp.,*
    549 U.S. 422 (2007) ...................................................................... 19

*Special Investments, Inc. v. Aero Air, Inc.,*
    360 F.3d 989 (9th Cir. 2004) ......................................................... 15

*Stock W., Inc. v. Confederated Tribes of the Colville Reservation,*
    873 F.2d 1221 (9th Cir. 1989) ................................................. 35, 36

*United States v. Martin,*
    226 F.3d 1042 (9th Cir. 2000) ....................................................... 19

*United States v. Texas,*
     457 F.3d 472 (5th Cir. 2006) .......................................................... 15

*Williams v. Babbitt,*
     115 F.3d 657 (9th Cir. 1997) .......................................................... 22

*Wind River Min. Corp. v. United States,*
     946 F.2d 710 (9th Cir. 1991) .................................................... 28, 29

**STATUTES:**

Administrative Procedure Act:

     5 U.S.C. 701(b)(1) ........................................................................ 33

     5 U.S.C. 702 ................................................................................. 33

     5 U.S.C. 704 ................................................................ 22, 23, 24, 29

     5 U.S.C. 706(2) ............................................................................ 32

Indian Reorganization Act:

     25 U.S.C. 465 ................................................................................. 4

28 U.S.C. 1291 ........................................................... 1, 3, 27, 37

28 U.S.C. 1331 ....................................................................... 1

28 U.S.C. 2401(a) .......................................................... 26, 28, 29

Quiet Title Act

     28 U.S.C. 2409a(a) ....................................................................... 31

National Environmental Policy Act:

42 U.S.C. § 4332 ........................................................................... 6

42 U.S.C. § 4332(2)(C) .................................................................. 6

## RULES AND REGULATIONS:

25 C.F.R. Part 151 ......................................................................... 4

25 C.F.R. 151.10 ............................................................................ 5

25 C.F.R. 151.12(d)(2)(iv) ........................................................... 12

25 C.F.R. 151.3(a)(3) ..................................................................... 4

25 C.F.R. 2.4(e) ....................................................................... 7, 22

25 C.F.R. 2.6(a) ........................................................................... 23

25 C.F.R. 2.6(b) ........................................................................... 23

25 C.F.R. 4.314(b) ....................................................................... 22

40 C.F.R. Parts 1500-1508 ............................................................ 6

40 C.F.R. 1508.9 ............................................................................. 6

40 C.F.R. 1508.13 ........................................................................... 6

43 C.F.R. 4.1(b)(1)(i) ............................................................... 7, 22

43 C.F.R. 4.312 ......................................................................... 7, 22

43 C.F.R. 4.314 ........................................................................... 29

43 C.F.R. 4.314(b) ................................................................... 7, 24

43 C.F.R. 4.330(b)(2) ................................................................. 7

Fed. R. App. P. 4(a)(2) ............................................................. 15

Fed. R. Civ. P. 15(b)(2) ........................................................... 42

Fed. R. Civ. P. 54(b) ................................................................ 39

Fed. R. Civ. P. 58(a) ................................................................ 34

Fed. R. Civ. P. 58(c)(2)(B) ................................................. 13, 34

**OTHER AUTHORITIES:**

44 Fed. Reg. 7,235 (Jan. 31, 1979) ............................................ 5

6A Charles Alan Wright, Arthur Miller, Mary Kay Kane,
    Federal Practice and Procedure § 1509 (2010) ....................... 18, 39

15B Charles A. Wright, Arthur R. Miller & Edward H. Cooper,
    Federal Practice and Procedure: Jurisdiction § 3914.32 (2d ed.
    1992) .................................................................................... 40

# GLOSSARY

| | |
|---|---|
| APA | Administrative Procedure Act |
| Appeals Board | Interior Board of Indian Appeals |
| Band | Santa Ynez Band of Chumash Mission Indians |
| BIA | Bureau of Indian Affairs |
| Board | Interior Board of Indian Appeals |
| IBIA | Interior Board of Indian Appeals |
| IRA | Indian Reorganization Act |
| NEPA | National Environmental Policy Act |
| POLO | Plaintiff-appellants Preservation of Los Olivos and Preservation of Santa Ynez |

## JURISDICTIONAL STATEMENT

The district court's jurisdiction was invoked under 28 U.S.C. 1331 for claims arising under the Administrative Procedure Act ("APA"). That court entered an order on March 13, 2015, holding that the plaintiffs-appellants Preservation of Los Olivos and Preservation of Santa Ynez (collectively, POLO) had failed to show cause why judgment should not be entered and the case dismissed in its entirety. ER:10.[1] A notice of appeal was filed on March 29, 2015. ER:1. On March 30, 2015, the district court entered an order confirming the entry of final judgment and dismissal of the case. SER:58-59.

POLO invoked this Court's jurisdiction under 28 U.S.C. 1291, but as explained *infra*, jurisdiction is lacking: POLO is not aggrieved by the district court's order because it can file a new lawsuit challenging the final agency action it disputes in its brief, for which it has not formally pleaded a claim in this case. Additionally, the claims in POLO's first amended complaint are moot, for the final agency action challenged in that pleading has been superseded by a new agency decision issued on remand from the district court. The appeal should therefore be dismissed.

---

[1] Factual citations reference POLO's excerpts of record (ER), along with the supplemental excerpts of record (SER) we file today.

## ISSUES PRESENTED

POLO challenged a decision by the Interior Board of Indian Appeals (IBIA or Appeals Board) dismissing, for lack of administrative standing, an administrative appeal of a 2005 decision by the Bureau of Indian Affairs (Bureau or BIA) to acquire land in trust for the Santa Ynez Band of Chumash Mission Indians (Band), a federally recognized tribe. In 2008, the district court granted summary judgment to POLO and remanded to the Appeals Board to reconsider whether POLO has administrative standing under standards explained in the court's order.

On remand, the Appeals Board issued a new decision in 2014 that again dismissed POLO's administrative appeal and, alternatively, rejected POLO's claims on the merits. POLO sought to reopen the district-court case to challenge the new Appeals Board decision without filing a new civil action or a supplemental complaint in the present action. The district court declined to do so and entered judgment instead, holding that if POLO wants to challenge to the new Appeals Board decision, it must file a new civil action. POLO's appeal presents the following issues:

2

1.    Is the appeal moot because the only final agency action challenged in POLO's complaint has been vacated and superseded by a new Appeals Board decision issued after remand from the district court?

2.    Does this Court lack appellate jurisdiction under 28 U.S.C. 1291 because POLO is not aggrieved by the district court's order requiring it to bring its unpleaded challenge to the new Appeals Board decision as a new civil action?

3.    If the Court has jurisdiction, did the district court abuse its discretion in declining to allow further litigation in this administratively closed case and requiring POLO to assert its unpleaded challenges to the new Appeals Board decision in a new lawsuit?

## STATEMENT OF FACTS

### A.    *The Land-into-Trust Decision and the Administrative Appeal*

The Indian Reorganization Act authorizes the Secretary of the Interior, acting through the Bureau, to acquire "any interest in lands, water rights, or surface rights to lands," and to hold title to those lands and rights "in the name of the United States in trust for the Indian

tribe or individual Indian for which the land is acquired." 25 U.S.C. 465.

An "overriding purpose" of the Reorganization Act was to help tribes

"assume a greater degree of self-government, both politically and

economically." *Morton v. Mancari*, 417 U.S. 535, 542 (1974). The

Secretary has promulgated regulations establishing the procedures and

substantive criteria she considers in determining whether to acquire

land in trust. *See* 25 C.F.R. Part 151. Consistent with the statute, those

regulations make clear that facilitating tribal self-determination and

economic development are among the reasons Interior acquires land in

trust for Indian tribes. *See* 25 C.F.R. 151.3(a)(3).

The Band has a relationship with the United States dating back

at least to at least 1906, when the Department acquired lands in trust

for the Band to be established as a reservation. *See* SER:28-29. The

same year that the Reorganization Act was passed, the Band voted

unanimously to accept the authority of the Act, and its members were

listed on contemporaneous Indian-census rolls. *See* SER:26-27, 30. In

later decades, the Band has submitted its articles of organization and

their amendments to the Secretary for approval (*see* ER:163, 178), and

it has regularly appeared on the federal government's list of federally

4

recognized tribes published annually in the Federal Register since that list was first published. *See, e.g.*, 44 Fed. Reg. 7,235, 7,236 (Jan. 31, 1979).

In November 2000, the Band submitted an application to the Bureau requesting that it take into trust 6.9 acres of vacant land that the Band owned in fee in Santa Barbara County, California, contiguous with the boundaries of the Band's reservation. *See* ER:176-78. Originally, the Band intended to construct a new administrative building and community center on the parcel. *See* ER:179-80. However, when cultural surveys revealed evidence that an ancient village site was located on the parcel, the Band changed its plans to include constructing: a cultural center, a commemorative park and history museum, and a retail building to help generate money for maintaining the other two facilities. *See* ER:426.

On January 14, 2005, the Pacific Regional Director of the Bureau issued a letter describing the location of property, analyzing the various factors the Bureau considers when taking land into trust (*see* 25 C.F.R. 151.10), and concluding that they weighed in favor of accepting the Band's application. *See* ER:419-29. Accordingly, the Bureau provided

5

notice to interested parties of its intent to accept the 6.9-acre parcel in trust. ER:429-32.

Prior to doing so, the Bureau noted that it had prepared an environmental assessment under the National Environmental Policy Act ("NEPA"), 42 U.S.C. 4332, along with a finding that taking the land into trust would not result in any significant environmental impacts, and it sought public input on those documents. *See* ER:428. NEPA is a procedural statute requiring preparation of a detailed impact statement for major federal actions significantly affecting the environment. *See* 42 U.S.C. 4332(2)(C). If an agency concludes, however, after preparing a more concise document known as an environmental assessment, that significant impacts would not occur, the agency may comply with NEPA by issuing a finding of no significant impact. *See* 40 C.F.R. 1508.9, 1508.13;[2] *see also Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 757-58 (2004). So long as the agency takes a hard look at the impacts of its proposed action and analyzes a reasonable range of alternatives to the proposal, NEPA does prevent the agency from pursuing its preferred

---

[2] The Council on Environmental Quality, established by NEPA, has issued regulations to guide federal agencies in interpreting the statute. *See* 40 C.F.R. parts 1500-1508.

6

course of action. *Id.* at 756-67; *see Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989)).

POLO administratively appealed the Bureau's decision to the Appeals Board, which is the final authority for the Department in deciding appeals from actions of Bureau officials. ER:406-14; *see* 43 C.F.R. 4.1(b)(1)(i) (providing that "[t]he Board decides finally for the Department" such appeals). Appeals Board decisions are "final for the Department," 43 C.F.R. 4.312, and "[n]o further appeal will lie within the Department" from them. 43 C.F.R. 4.314(b). Administrative actions by a Bureau's regional director are appealable to the Appeals Board. *See* 25 C.F.R. 2.4(e).[3] Here, the Appeals Board issued a decision dismissing POLO's appeal, holding that the group's members had failed to demonstrate their standing to maintain the administrative appeal. *See Santa Ynez Valley Concerned Citizens v. Pacific Regional Director, Bureau of Indian Affairs*, 42 IBIA 189, 205 (2006) (ER:352).

---

[3] The Appeals Board reviews land-into-trust decisions for whether the Bureau adequately considered the factors in the regulations, but it does not substitute its judgment for the discretion of the Bureau official. *See City of Eagle Butte v. Aberdeen Area Director*, 17 IBIA 192, 195-96 (1989); *accord* 43 C.F.R. 4.330(b)(2).

B.    *POLO's Lawsuit and the Summary Judgment Order*

In March 2006, POLO filed this lawsuit challenging the Appeals

Board's dismissal order, and the Band, at its request, was allowed to

intervene. *See* ER:455, 457 (D. Ct. docket entries 1, 24). On the

government's motion, the district court granted a voluntary remand

allowing the Bureau to supplement the administrative record, and

allowing the Appeals Board to make a new decision based on that more

complete record. *See* ER:448. Meanwhile, during this limited remand,

the court retained jurisdiction "until and unless the parties stipulate to

[the action's] dismissal or the Court otherwise orders." *Id.* The court

further ordered that if, after the Appeals Board issued its next order

based on the completed record, POLO still wanted to challenge that

determination, it had to do so by filing an amended complaint. *Id.*

On the voluntary remand, the Appeals Board again dismissed

POLO's administrative appeal for lack of administrative standing. *See*

*Preservation of Los Olivos v. Pacific Regional Director, Bureau of Indian*

*Affairs*, 45 IBIA 98, 99 (June 29, 2007) (ER:384). Consistent with the

court's voluntary-remand order, POLO filed an amended complaint

alleging two "cause[s] of action." First, the pleading alleged that the

8

Appeals Board's decision that POLO lacks standing was arbitrary and capricious in violation of the APA. ER:338. Second, the pleading included a "cause of action" for declaratory and injunctive relief, seeking a "judicial determination" that POLO has standing to pursue its appeal before the Appeals Board, and also asserting POLO's entitlement to an injunction preventing the Bureau from taking the Band's land into trust. ER:339.

The district court granted summary judgment to POLO in part, vacating the Appeals Board's dismissal and remanding the matter for further proceedings. *Preservation of Los Olivos v. U.S. Dep't of the Interior*, 635 F. Supp. 2d 1076, 1096 (C.D. Cal. 2008) (ER:304). The court denied POLO's request for declaratory relief directing the Appeals Board to find that POLO had administrative standing, *id.* at 1095-96 (ER:302-03)—hence, the court's order denied POLO's summary judgment motion in part, too. *Id.* at 1079 (ER:276). At the conclusion of the order, the court vacated the Appeals Board's decision and remanded the matter to the Appeals Board. *Id.* at 1096 (ER:304). A docket entry for the summary judgment order reads, "Case Terminated." ER:464.

9

C.    *Administrative Proceedings on Remand to the Appeals Board*

During the remand from the district court, the Supreme Court decided *Carcieri v. Salazar*, 555 U.S. 379, 129 S. Ct. 1058 (2009), a timely challenge to a Secretarial land-into-trust decision in which the Court held that the Indian Reorganization Act authorizes the Secretary to acquire land in trust under the Act's first definition of "Indian" for tribes that were "under Federal jurisdiction" as of 1934, when Congress passed the Act. *See id.* at 395. As Justice Breyer's concurrence in *Carcieri* explains, a tribe may have been "under Federal jurisdiction" in 1934 even though its government might not have been formally recognized by the United States until after that date. *Id.* at 397-399 (Breyer, J., concurring). POLO informed the Appeals Board that it believed the Band was not "under Federal jurisdiction" in 1934 such that the Bureau would have authority to take land into trust for the Band. *See* ER:138-40, 148. In response, the Bureau sought a voluntary remand from the Appeals Board to address the issue, which the Appeals Board granted, vacating part of the Bureau's decision and staying the administrative-appeal proceedings. *See* ER:150.

10

On remand from the Appeals Board, the Bureau sought additional evidence and argument from POLO and the Band concerning the *Carcieri* issue, as well as advice from the Department's Associate Solicitor, Division of Indian Affairs (*see* ER:153-54), who concluded, based on the evidence that the Band had contemporaneously voted to accept the Indian Reorganization Act, that the Band was "under Federal jurisdiction" in 1934. *See* SER:26-27, 37. The Associate Solicitor found that conclusion further bolstered by evidence that the United States had established a reservation for the Band no later than 1906 and that the Band's members were listed on Indian-census rolls in 1934. *See* SER:28-30, 37.

After considering the additional argument and legal analysis, the Bureau reaffirmed its prior decision to take the land into trust. ER:154. The Bureau's letter provided instructions for administratively appealing the determination that *Carcieri* did not diminish the Bureau's authority to take the Band's land into trust (*id.*), but POLO failed to submit its appeal within the prescribed time period. After providing POLO notice and the opportunity to show cause (SER:39), the Appeals Board dismissed POLO's administrative appeal from that

11

portion of the Bureau's decision. *See No More Slots v. Pac. Regional Dir., Bureau of Indian Affairs*, 56 IBIA 233, 242-43 (2013) (SER:53-54); *see also* ER:241.

With the appeals from the remand on the *Carcieri* issue dismissed, the Appeals Board lifted the stay on the remainder of POLO's administrative appeal of the land-into-trust decision. ER:159-60. On June 3, 2014, the Appeals Board completed the remand from the district court and issued another new decision, again finding that POLO lacked standing and, alternatively, affirming the Bureau's decision on the merits. *Preservation of Los Olivos v. Pacific Regional Director, Bureau of Indian Affairs*, 58 IBIA 278, 280-81 (June 3, 2014) (ER:234-35). The Bureau took the 6.9-acre parcel into trust a few weeks later (*see* ER:224; SER:19), consistent with its recently amended regulations. *See* 25 C.F.R. 151.12(d)(2)(iv) (requiring the Bureau to "[i]mmediately acquire the land in trust" after administrative appeals have been exhausted, among other conditions not at issue here).

D.    *Post-remand Proceedings in the District Court*

POLO provided the district court notice of the new Appeals Board decision and sought to reopen litigation in the same, previously closed

12

case. However, POLO did not seek to challenge the new Appeals Board decision either by filing a complaint in a new case or by obtaining permission to file a supplemental pleading in the old case. On September 8, 2014, the district court held a hearing and issued an order to show cause why judgment should not be entered. SER:21; *see* ER:212-26. After briefing and argument, on March 13, 2015, the district court issued an order holding that POLO had failed to establish that judgment should not be entered and the entire case dismissed. ER:4. In its order, the court rejected POLO's request to "reopen this case" and "reverse the IBIA's decision through summary adjudication" for two main reasons. ER:6.

First, the court held that the summary judgment order addressed both claims in POLO's complaint and "terminated the case in its entirety." ER:7; *see also* ER:8 ("Both claims in the [first amended complaint], not only the first, were resolved by the [2008 summary judgment] order."). Thus, the court concluded (ER:7) that although a separate document was not placed on the docket, the judgment became effective on December 5, 2008, 150 days after entry of the summary judgment order, pursuant to Federal Rule of Civil Procedure 58(c)(2)(B).

13

Second, the court held that the summary judgment order should be considered a judgment because the parties treated it as such. For example, both the government and the Band filed notices of appeal from the judgment (although they were voluntarily dismissed). And POLO applied for attorneys' fees based on the premise that the order was final (although the application was withdrawn when fees were settled). In its attorneys' fees motion, the district court observed, POLO stated that the judgment had become final—a statement the district court found to be "clearly inconsistent" with POLO's current litigating position. ER:9-10 n.6. Accordingly, the court held, POLO had waived any objection to the summary judgment order not being final. ER:9. If POLO wanted to seek judicial review of the new Appeals Board decision, the court explained, it "must file a new action." *Id*. And to resolve any doubt about whether the case was still open, the court stated that it would enter a separate document dismissing the case "in its entirety." ER:10.

On March 30, 2015, the district court entered another order confirming that all of the issues in the case had been resolved and that judgment had already effectively been entered. SER:59. To avoid any

14

uncertainty, the court also entered judgment anew, dating back to the

summary judgment order. *Id.* This appeal follows.[4]

<p style="text-align:center">STANDARD OF REVIEW</p>

Mootness is a question of Article III jurisdiction that is considered

*de novo. See Demery v. Arpaio*, 378 F.3d 1020, 1025 (9th Cir. 2004).

Appellate jurisdiction is also considered *de novo. See Special*

*Investments, Inc. v. Aero Air, Inc.*, 360 F.3d 989, 992 (9th Cir. 2004). If

the Court does have jurisdiction, the district court's refusal to reopen an

administratively closed case is reviewed for abuse of discretion. *See*

*United States v. Texas*, 457 F.3d 472, 476 (5th Cir. 2006). Questions of

law are reviewed *de novo. See, e.g., Insur. Co. of N. Am. v. Moore*, 783

F.2d 1326, 1328 (9th Cir. 1986) (refusal to award relief on an unpleaded

cause of action).

---

[4] POLO filed its notice of appeal on March 29, 2015, after the district court had announced that it would enter a separate judgment but one day before the judgment was actually entered. POLO does not refer to the March 30, 2015 judgment in its opening brief and therefore has forfeited any challenges to that order. *See Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1110 n.1 (9th Cir. 2000) (*en banc*). Had POLO properly challenged the order, such a challenge would have been timely without any need for POLO to file a second notice of appeal. *See* Fed. R. App. P. 4(a)(2).

## SUMMARY OF ARGUMENT

This Court lacks jurisdiction to review the district court's order confirming that judgment had been entered by operation of law nearly seven years ago for two reasons. First, the claims in the operative complaint are moot. The only final agency action challenged in that complaint was the old Appeals Board decision that the district court vacated through its summary judgment order when it remanded the matter to the Appeals Board. The new Appeals Board decision supersedes the earlier decision, as it addresses both whether POLO has administrative standing to maintain its appeal to the Board and also whether that administrative appeal succeeds on the merits.

Second, appellate jurisdiction is lacking because POLO is not aggrieved by the district court's decision declining to reopen the previously terminated litigation. Assuming that POLO can satisfy the normal requirements for justiciability, it may challenge the new Appeals Board decision by filing a new civil action, as the district court correctly recognized. Indeed, several years remain under the statute of limitations for POLO to bring such a challenge. POLO suffers no harm from the court's order confirming the closure of the old case.

16

Even if this Court has jurisdiction, the district court did not abuse its discretion in declining to reopen the litigation. Where, as here, a challenge raised in a party's district-court papers is not the subject of a properly pleaded claim, district courts need not consider it. No claim challenging the new Appeals Board decision was pending in a proper pleading—either through a complaint in a separate civil action or in any supplemental complaint in this case. POLO contends that because its complaint challenges the Bureau's land-into-trust decision, it may litigate the adequacy of the new Appeals Board decision without filing a new civil action or a supplemental pleading. That is not so. The Appeals Board's action, not the Bureau's, is the final agency action to be reviewed under the APA. The only way for an interlocutory decision like the Bureau's to be reviewed is indirectly through a challenge to the final action of the Board. And because no claim challenging the new Appeals Board decision was pending in a proper pleading, the district court did not abuse its discretion in declining to reopen the litigation. The appeal should be dismissed or, alternatively, the court's order affirmed.

ARGUMENT

I.   *The Court lacks Article III jurisdiction because the only properly*
     *pleaded claims before the district court are now moot.*

     A.   *The Board's old decision has been vacated and superseded.*

The claims in POLO's first amended complaint are moot because

the earlier Appeals Board decision, which was the subject of that

pleading, has now been superseded. POLO has not challenged the new

Appeals Board decision by obtaining the court's permission to file a

supplemental complaint filed in this case.[5] Nor, to our knowledge, has it

done so by filing a new civil action. Indeed, POLO concedes that its first

amended complaint (ER:323-41) is still the "operative" pleading. Br. 1.

As we explain, because there were no properly pleaded claims before the

district court challenging the new Appeals Board decision, the issue of

---

[5] The district court would not have abused its discretion by denying
such a motion had it been made, but it was not. *See Planned
Parenthood of S. Ariz. v. Neely*, 130 F.3d 400, 403 (9th Cir. 1997)
(rejection of supplemental complaint not an abuse of discretion where
"the original action * * * had reached a final resolution and the district
court did not retain jurisdiction" to supervise compliance with its prior
order); *see also* 6A Charles Alan Wright, Arthur Miller, Mary Kay Kane,
*Federal Practice and Procedure* § 1509, at 281-82 (3d ed. 2010) ("Leave
to file a supplemental pleading after trial will be denied * * * when the
matters alleged in the supplemental pleading could be the subject of a
separate action[.]").

18

whether the summary judgment order resolving challenges to the old Appeals Board decision was a final judgment, is moot.

Article III of the Constitution limits federal courts' jurisdiction to "Cases" and "Controversies," meaning that "an actual controversy must exist" throughout "all stages of the litigation." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013). "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of a lawsuit" or otherwise extinguishes the live character of the dispute "at any point during the litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (2013); *see Murphy v. Hunt*, 455 U.S. 478, 481 (1982). Mootness may be raised for the first time on appeal, either by the parties or by the Court *sua sponte. See, e.g., DBSI/TRI IV Ltd. P'ship v. United States*, 465 F.3d 1031, 1038 (9th Cir. 2006).[6]

---

[6] Threshold non-merits arguments need not be resolved in any particular order. *See, e.g., Sinochem Intl. Co., Ltd. v. Malaysia Intl. Shipping Corp.*, 549 U.S. 422, 430-431 (2007). The Court usually considers its own jurisdiction before determining whether the district court had jurisdiction. *See, e.g., United States v. Martin*, 226 F.3d 1042, 1045 (9th Cir. 2000). Here, however, the district court did not evaluate mootness, so that issue goes to this Court's jurisdiction as well.

The Appeals Board's issuance of a new decision on June 3, 2014, renders POLO's challenges to the earlier Appeals Board decision moot. *See, e.g., Grand Canyon Trust v. U.S. Bureau of Reclamation*, 691 F.3d 1008, 1017 (9th Cir. 2012); *Aluminum Co. of America v. Bonneville Power Admin.*, 56 F.3d 1075, 1078 (9th Cir. 1995) (challenge to agency decision was moot where agency decision had expired and agency's "current actions are being taken pursuant to" a new analysis that "superseded" an earlier, challenged analysis). The old Appeals Board decision was vacated by the district court's summary judgment order (ER:304) and was never reinstated. Instead, the Appeals Board issued a new decision altogether. *See Preservation of Los Olivos*, 58 IBIA at 278-319 (ER:232-73). Not only did the new Appeals Board decision provide a new analysis supporting dismissal of POLO's claims for lack of administrative standing, but in the alternative, the new decision also addressed POLO's claims on the merits. *See id.* at 306-19 (ER:260-73).

Because the Appeals Board issued a new decision, the question of whether the district court's summary judgment order resolving POLO's stale claims against the old Appeals Board decision ripened into a final judgment is purely academic. After all, nobody is appealing from the

summary judgment order or the court's prior resolution of POLO's claims. POLO nonetheless contends (Br. 26-27) that its complaint still contains live claims to be resolved. As we next explain, that contention is incorrect.

> B.   *The Bureau's land-into-trust decision cannot be challenged on the existing complaint because it is not final agency action.*

POLO contends (Br. 26) that its claims challenging the merits of the Bureau's land-into-trust decision could still be resolved on the basis of the existing complaint. That argument lacks merit. The Bureau's decision is not directly challengeable because it is not final agency action in this case.

Challenges to land-into-trust decisions may be brought only under the APA. *See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199, 2208 (2012) (characterizing land-into-trust challenge as a "garden-variety APA claim"); *Big Lagoon Rancheria v. California*, 789 F.3d 947, 953 (9th Cir. 2015) (APA is the "proper vehicle" for challenging land-into-trust decisions). Other than actions "made reviewable by statute," the APA only permits judicial review of agency action that is "final," *i.e.*, that both marks the consummation of

the agency's decisionmaking process and determines legal rights or obligations. 5 U.S.C. 704; *see Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). No statute other than the APA makes POLO's challenges reviewable. Thus, POLO must demonstrate that it is challenging final agency action, or its case must be dismissed.

Where the Appeals Board issues a decision, as it did here, that decision represents the final agency action that a court will review under the APA. Here, the Appeals Board's decision resolves POLO's administrative appeal from the Bureau's land-into-trust decision. ER:419-29; *see* ER:232. Administrative actions by a regional director of the Bureau are appealable to the Appeals Board, 25 C.F.R. 2.4(e), which is the final authority for the Department in deciding appeals from actions of Bureau officials. *See* 43 C.F.R. 4.1(b)(1)(i) (providing that "[t]he Board decides finally for the Department" such appeals). Appeals Board decisions are "final for the Department," 43 C.F.R. 4.312, and "[n]o further appeal will lie within the Department" from them. 43 C.F.R. 4.314(b); *see, e.g.*, *Williams v. Babbitt*, 115 F.3d 657, 660 n.3 (9th Cir. 1997) ("IBIA exercises final decisionmaking authority for the Secretary of Interior concerning challenges to administrative actions by

Bureau of Indian Affairs * * * officials."). Thus, the Appeals Board's decision in this case "mark[s] the consummation of the agency's decisionmaking process," and is "not * * * of a merely tentative or interlocutory nature." *Bennett*, 520 U.S. at 177-78 (internal quotation marks, citation omitted).

Additionally, the Appeals Board decision is an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* at 178 (internal quotation marks, citation omitted). Whenever a Bureau land-into-trust decision is on appeal to the Appeals Board, the land-into-trust decision is automatically stayed by operation of Interior's regulations. Specifically, if "no notice of appeal has been filed," then a Bureau land-into-trust decision "shall be effective when the time for filing a notice of appeal has expired." 25 C.F.R. 2.6(b). Otherwise, "[n]o [Bureau] decision, which at the time of its rendition is subject to appeal to a superior authority in the Department" like the Appeals Board, "shall be considered final so as to constitute Departmental action subject to judicial review under 5 U.S.C. 704," unless the Board makes certain findings not relevant here. 25 C.F.R. 2.6(a). In other words, POLO's administrative appeal

23

rendered the Bureau's decision non-final until the appeal was resolved by the Appeals Board. Thus, the Appeals Board's decision gives legal force and effect to the land-into-trust decision, thereby satisfying *Bennett*'s remaining requirement for final agency action.

The only way to challenge interlocutory agency actions like the Bureau's land-into-trust decision is indirectly, *i.e.*, by challenging the Appeals Board decision that is final agency action reviewing the Bureau's action. That is so because the land-into-trust decision was an intermediate agency decision not immediately reviewable. Interior regulations provide that "[n]o decision of [a] BIA official that at the time of its rendition is subject to appeal to the Board, will be considered final so as to constitute agency action subject to judicial review under 5 U.S.C. 704," unless the Appeals Board orders the decision to be immediately effective, 43 C.F.R. 4.314(b), which it did not do here. Moreover, the APA itself provides that intermediate decisions such as that of the Bureau are "subject to review on the review of the final agency action." 5 U.S.C. 704. Accordingly, POLO is mistaken in asserting that it may challenge the Bureau's decision other than by

24

bringing a claim directly challenging the Appeals Board decision that represents the final agency action.

The problem for POLO is that the only final agency action challenged in its "operative" complaint (ER:324-35) that was subject to challenge when the complaint was filed was the Appeals Board's old decision from June 2007.[7] That decision, however, was later vacated by the district court's summary judgment order. *See* ER:304. The old Appeals Board decision, therefore, no longer has any legal or force or effect. *See, e.g.*, *Alsea Valley All. v. Dep't of Commerce*, 358 F.3d 1181, 1186 (9th Cir. 2004) (district-court order "setting * * * aside" agency decision as arbitrary and capricious "prohibits, as a practical matter, the enforcement of the [agency's] decision as is") (brackets omitted). Additionally, once the Appeals Board issued its new decision in June 2014, the old decision was superseded altogether. POLO never brought a claim challenging the new Appeals Board decision, either in a supplemental complaint or a new civil action. Thus, any challenges to the old Appeals Board decision are moot.

---

[7] The complaint also purported to challenge the Board's February 2006 order, but once the court allowed a voluntary remand, that order was no longer the Department's last word on whether POLO could bring its administrative appeal. Thus, it was no longer final agency action.

C. *This case does not fit an exception to mootness doctrine.*

POLO cannot avoid dismissal on the grounds that the dispute fits an exception to mootness doctrine. For example, the dispute does not avoid dismissal on mootness grounds by being capable of repetition, yet evading review. To fit that exception, "a controversy * * * too short to be fully litigated prior to cessation or expiration * * * must be of *inherently* limited duration." *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 836 (9th Cir. 2014) (emphasis in original, quotation marks, citation omitted). Here, however, the dispute is not inherently limited in duration, because no further remands will necessarily result if the new Appeals Board decision is upheld or left to stand unchallenged. Nor would the dispute evade review because POLO has six years from the time of the Appeals Board's decision—until June 3, 2020—to file a new civil action. 28 U.S.C. 2401(a). That gives POLO "ample time to obtain judicial review." *Aluminum Co. of America*, 56 F.3d at 1078.

This is also not a case where mootness results from the "voluntary cessation" of alleged unlawful practices, thereby implicating the higher burden of establishing a lack of jurisdiction in those situations. *Cf. Already, LLC*, 133 S. Ct. at 727. By contrast, the Appeals Board issued

26

its new decision after its old decision was vacated by a federal court order over the government's vigorous defense. Plus, the Appeals Board had no option on remand to avoid issuing a decision about POLO's appeal. Other than seeking a limited remand from the Appeals Board to address legal questions about the Supreme Court's intervening decision in *Carcieri* (*see* ER:149-50) and a similarly limited re-opening of the Board proceedings to consider a supplemental administrative record (*see* ER:388), the Bureau did not voluntarily seek to reconsider, much less withdraw, its land-into-trust decision. Far from it—the Bureau reaffirmed its original decision after additional analysis. ER:153-54; *see* SER:26-27, 37. Thus, the Appeals Board had to issue a new decision after remand from the district court because POLO's administrative appeal remained pending before it. That compulsory procedure is virtually the opposite of voluntary cessation. In sum, the case is moot, and no exception to mootness doctrine applies.

II.   *The Court lacks appellate jurisdiction because POLO is not aggrieved by the district court's order terminating the case.*

Not only is this case moot, but the Court lacks jurisdiction for the additional reason that POLO has no right to appeal under 28 U.S.C. 1291 because it fails to demonstrate that it is "aggrieved" by the district

court's order confirming the entry of final judgment. *Bryant v. Tech. Research Co.*, 654 F.2d 1337, 1343 (9th Cir. 1981) (internal quotation marks omitted); *see also Parr v. United States*, 351 U.S. 513, 516-17 (1956) ("Only one injured by the judgment sought to be reviewed can appeal."); *Chromalloy Am. Corp. v. Fischmann*, 716 F.2d 683, 687 (9th Cir. 1983). That order does not resolve any claims that POLO may have against the new Appeals Board decision, much less resolve such claims against POLO. And assuming that it can satisfy the requirements for justiciability, POLO can challenge the Appeals Board's decision by "fil[ing] a new action." ER:10. POLO is therefore not prejudiced by the district court's order.

POLO identifies some potential problems it believes would result if it had to challenge the new Appeals Board decision through a new civil action. First, POLO suggests (Br. 56) that its claim might be time-barred. That contention is incorrect. The statute of limitations for challenging the new Appeals Board decision has not yet expired. Under the applicable statute, 28 U.S.C. 2401(a), POLO's claim began to accrue on the day that the Appeals Board issued its decision, which is the final agency action at issue here. *See, e.g., Wind River Min. Corp. v. United*

28

*States*, 946 F.2d 710, 716 (9th Cir. 1991) (holding that statute of limitations began running at the time Interior officials rejected litigant's administrative appeal).

If POLO wants to challenge the new Appeals Board decision, it has six years from the date of that decision—until June 3, 2020—to file a new civil action. *See* 28 U.S.C. 2401(a). And even though the underlying land-into-trust decision was issued in 2005, there is no question that if POLO brings a timely challenge to the Appeals Board's decision and satisfies Article III's prerequisites for suit, it may indirectly challenge the 2005 land-into-trust decision that the Appeals Board upheld, as explained *supra*. *See* 5 U.S.C. 704; 43 C.F.R. 4.314.

To be sure, POLO may wish to raise the issue that, after the Supreme Court's decision in *Carcieri*, the Bureau's decision was beyond its authority under the Indian Reorganization Act. That contention, however, was the subject of a separate decision by the Bureau (ER:159-60), which POLO did not properly appeal to the Appeals Board. *See No More Slots v. Pac. Regional Dir., Bureau of Indian Affairs*, 56 IBIA 233, 242-43 (2013) (SER:53-54) (dismissing POLO's appeal as untimely filed); *see also* ER:241 (citing the dismissal decision).

29

To the extent that POLO wants to raise issues pertaining to *Carcieri*, it may only do so if it first successfully challenges not the new Appeals Board decision but a different Appeals Board decision dismissing POLO's administrative appeal concerning the *Carcieri* issues on timeliness grounds. *See No More Slots*, 56 IBIA at 242-43 (2013) (SER:53-54). Again, however, POLO has ample time (until March 18, 2019) to challenge that dismissal decision before the six-year statute of limitations expires. Once that statutory period has run, however, POLO cannot challenge the dismissal of its *Carcieri*-based administrative appeal as untimely. And for failing to timely appeal that decision, POLO may not challenge either the land-into-trust decision or other decisions by Interior about that same land on the grounds that acquiring the land in trust was beyond the Bureau's authority. *Cf. Big Lagoon Rancheria*, 789 F.3d at 954 (holding that late, indirect challenges to land-into-trust decisions are time-barred).

Next, POLO correctly points out (Br. 4, 27) that when the government filed its answer to the First Amended Complaint in August 2007, the Secretary of the Interior had informally agreed to refrain from taking the land into trust "until a final disposition is issued" in the case.

ER:318. But such a disposition was issued in 2008 when the district court vacated the old Appeals Board decision and remanded the matter. To the extent that POLO contends it is prejudiced by the ending of the stay agreement and the transfer of the property into trust, that contention is misplaced. The parties' stay agreement preceded the Supreme Court's decision in *Patchak*, which held that land-into-trust decisions are reviewable under the APA, even if the subject property is held in trust by the United States when the decision is challenged. 132 S. Ct. at 2208.

Before *Patchak*, the United States regarded the "trust or restricted Indian lands" exception to the scope of the United States' waiver sovereign immunity in the Quiet Title Act, 28 U.S.C. 2409a(a), as foreclosing judicial relief under the APA if the United States held the subject property in trust at the time of the litigation. *See id.* at 2208-09. Consequently, once land was taken into trust by the Secretary, the United States' view was that a court could not set aside Interior's land-into-trust decision. Now that the Supreme Court has rejected the government's position and made clear that the APA is an appropriate vehicle for raising many land-into-trust challenges (*see id.* at 2209),

31

timely challenges may proceed under the APA regardless of whether the property is yet held in trust by the United States. A stay of a land-into-trust decision, therefore, is no longer necessary now that *Patchak* makes clear that reviewing courts may "set aside" such decisions under ordinary administrative-law principles. 5 U.S.C. 706(2).

Next, POLO contends (Br. 56) that if it has to file a new lawsuit, the Band might not waive its sovereign immunity and intervene as a party in that suit. The Band, however, is not an indispensable party to affording relief from the decision that is challenged by POLO's "garden-variety APA claim." *Patchak*, 132 S. Ct. at 2208. To be sure, the Band is a separate sovereign entity, and there may be circumstances in which resolution of a non-APA claim against the government could require the presence of an Indian tribe to provide complete relief. But where, as here, a party's claim is limited to challenging a particular agency decision under the APA, relief is ordinarily limited to "set[ting] aside" the agency decision and remanding the matter to that agency. 5 U.S.C. 706(2); *see, e.g.*, *Idaho Farm Bureau Fed'n v. Babbitt,* 58 F.3d 1392, 1405 (9th Cir. 1995) ("Ordinarily when a regulation is not promulgated in compliance with the APA, the regulation is invalid."). And where an

32

APA claim is brought, the relief sought is against the agency decisionmaker, not the tribe. *See* 5 U.S.C. 702 (providing right of review for persons wronged by "agency action"); *id.* 701(b)(1) (defining "agency"). Thus, this Court has held that where a claim is brought under the APA, the claimant complains of injury resulting from the action of the agency, not the tribe, and the tribe is ordinarily not an indispensable party under Rule 19. *See Alto v. Black*, 738 F.3d 1111, 1129 (9th Cir. 2013).

In sum, POLO is not harmed by the district court's order entering judgment on the claims that concerned the old Appeals Board decision. The court's order does nothing to prevent POLO from bringing its challenge to the new Appeals Board decision by filing a separate civil action. Jurisdiction is therefore lacking over POLO's appeal. *See Parr*, 351 U.S. at 516-17; *Chromalloy Am. Corp.*, 716 F.2d at 687; *Bryant*, 654 F.2d at 1343.

III.   *If the Court has jurisdiction to resolve this appeal, the district court did not abuse its discretion by refusing to reopen the case for further litigation.*

The district court concluded that its summary judgment order became a final judgment by operation of Federal Rule of Civil Procedure 58(c)(2)(B). That rule provides that judgment is entered by operation of law "if a separate document is required, when the judgment is entered in the civil docket" and "150 days have run from the entry in the civil docket." Fed. R. Civ. P. 58(c)(2)(B). Here, the summary judgment order was entered in the civil docket on July 9, 2008. ER:464. No separate judgment was ever entered, although one was required. *See* Fed. R. Civ. P. 58(a). In that situation, the district court correctly identified Rule 58(c)(2)(B) as providing for the manner in which the summary judgment order ripened into a judgment.

The real issue here is whether the summary judgment order adjudicated all of the claims in POLO's complaint so as to constitute a final judgment that ends a case, rather than a partial judgment on fewer than all of the claims against all of the parties. As we will next demonstrate, the district court's holding that "[b]oth claims in the [first

amended complaint], not only the first, were resolved by the [summary judgment] order" is correct. ER:8.

POLO's first amended complaint alleged two "causes of action"—one seeking to hold that the Appeals Board's old decision was arbitrary and capricious in violation of the APA, and a second "cause of action" purporting to seek a declaratory judgment that plaintiffs have standing to pursue their administrative appeal before the Appeals Board, as well as an injunction preventing the Bureau from taking the land at issue into trust until the Board considered POLO's administrative appeal on the merits. ER:338-40. Nobody disputes that the district court resolved POLO's first cause of action in POLO's favor by holding that the Appeals Board's old decision erred in its analysis of POLO's standing to maintain the administrative appeal.

POLO contends (Br. 26) that the summary judgment order did not resolve its second "cause of action" for declaratory relief, but that is incorrect.[8] The district court squarely declined to direct the Appeals

---

[8] The plea for a declaratory judgment and injunction was really a request for relief, not an independent cause of action. *Cf. Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937) (Declaratory Judgment Act is "procedural only"); *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225

Board to conclude that POLO had demonstrated administrative standing, instead leaving the Appeals Board to resolve that issue in the first instance. *See Preservation of Los Olivos*, 635 F. Supp. 2d at 1095-96 (ER:302-03). Such a remedy is hardly an indication that a claim has not been resolved. Rather, it is the norm when a reviewing court holds that an agency applied an incorrect legal standard. *See, e.g., Bromfield v. Mukasey*, 543 F.3d 1071, 1080 (9th Cir. 2008) (remanding so that agency appeals board "can apply the correct legal standard" in the first instance to the record facts).

Nor is POLO correct in contending (Br. 26) that its claims were incompletely resolved because the district court did not reach the merits of POLO's challenges to the Bureau's land-into-trust decision that were the basis for POLO's appeal to the Appeals Board. The Appeals Board interprets administrative standing as an issue that must be resolved before considering the merits of an appeal. *See, e.g., Shelbourn v. Acting Great Plains Regional Director, Bureau of Indian Affairs*, 54 IBIA 75, 78 (2011) (determining administrative standing "is to determine whether

---

(9th Cir. 1989) (it "only creates a remedy"). In any event, POLO did not pursue injunctive relief in the district court, and that relief became unnecessary once the Board's decision was vacated.

the appellant is entitled to be heard on the merits of his appeal"); *Ariz.*
*State Land Dep't v. W. Regional Director, Bureau of Indian Affairs*, 43
IBIA 158, 162 (2006) ("Before the Board can reach the merits of these
appeals we must first determine whether the appellants have standing
to bring their appeals."). Thus, if the Appeals Board's holding that
POLO lacks administrative standing is correct, then neither the
Appeals Board nor the district court has to reach the merits of POLO's
challenges to the Bureau's land-into-trust decision. That fact alone,
however, does not mean that the claims in POLO's complaint were not
fully adjudicated.

In support of its argument that the district court's summary
judgment order was not a final judgment, POLO cites (Br. at 27-29)
case law interpreting whether a remand order to an administrative
agency is final and immediate appealable under 28 U.S.C. 1291. *See,*
*e.g., Alsea Valley All.,* 358 F.3d at 1184. POLO, however, is not trying to
appeal the summary judgment order. Thus, there is no need to
determine whether its time to do so began running in 2008.

Notwithstanding the doctrine set forth in cases like *Alsea Valley*,
if the government had pursued its appeal, then the order could have

been cross-appealed by plaintiffs, since appellate jurisdiction to review the order would already be established. *See Cty. of Los Angeles v. Shalala*, 192 F.3d 1005, 1012 (D.C. Cir. 1999); *NAACP v. U.S. Sugar Corp.*, 84 F.3d 1432, 1436 (D.C. Cir. 1996) ("[W]hat matters for the purposes of our appellate jurisdiction is whether the district court's decision—and not any particular party challenging it—is properly before us."). And POLO was arguably aggrieved when its request for declaratory relief was denied, sufficient to have supported a cross-appeal. *See, e.g., Forney v. Apfel*, 524 U.S. 266, 271 (1988) (appellant was "aggrieved" where she obtained "some, but not all, of the relief she requested," specifically, remand of agency decision but not reversal and setting decision aside).

But even if POLO could not have appealed on its own, that does not demonstrate that the district judge abused his discretion by declining to retain jurisdiction over the case to allow POLO to litigate a multitude of arguments (Br. at 35-54) that were never the subject of any well-pleaded claim.[9] POLO's reliance on the question of appellate

---

[9] The court correctly declined to reopen the litigation in the absence of any motion by POLO for leave to file a supplemental complaint. But even if POLO had made such a request, the court would have been on

finality incorrectly conflates whether the order was immediately appealable—it was by the government, but possibly not by POLO alone—with whether the district court abused its discretion by refusing to reopen the case. As we have already demonstrated, because POLO can pursue its challenge in a new lawsuit (assuming it can satisfy Article III prerequisites), there was no abuse of discretion.

Similarly, POLO relies (Br. 27) on the fact that the government did not ask the district court to enter a separate judgment, including direction for entry of partial judgment under Federal Rule of Civil Procedure 54(b), as evidence that the government did not consider the summary judgment order final, which POLO contends is relevant to whether the order was final. *Cf. Casey v. Albertson's Inc*, 362 F.3d 1254, 1256 (9th Cir. 2004) (requirement that judgment be set forth in a separate document can be waived "when the parties treat a fully dispositive summary judgment order as if it were a final judgment). But again, this Court has consistently recognized that the United States may immediately appeal an order remanding an administrative decision to the agency by right, and without obtaining the entry of

solid ground in rejecting it. *See, e.g., Planned Parenthood*, 130 F.3d at 403; Wright, Miller & Kane, *supra*, at 281-82.

partial judgment under Rule 54(b) or other certification for a permissive appeal. *See Alsea Valley All.,* 358 F.3d at 1184 (collecting cases); 15B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction § 3914.32, at 241-44 n.19 (2d ed. 1992) (same). Indeed, seeking such certifications would have indicated a view that the order was *not* immediately appealable by the government.

POLO cites a district court order from October 2006 as support for the proposition that the district court expressly "retain[ed] jurisdiction while this case was on remand." Br. 27. That contention is misleading, however, because the October 2006 order concerns the court's retention of jurisdiction during a limited voluntary remand that the government sought at an earlier stage of the case to complete the administrative record. According to the court's order, once the Bureau completed the record and the Appeals Board issued a new decision based on that completed record, POLO could challenge that Appeals Board's decision "by filing a 'First Amended Complaint,'" which POLO did. ER:448; *see* ER:323-41. After the parties litigated the claims in the First Amended Complaint, the district court remanded the matter to the Appeals Board a second time when it granted POLO summary judgment.

40

The summary judgment order, however, says nothing about retaining jurisdiction, or whether the court would allow further litigation in the same lawsuit after the Appeals Board completed its decision on the second remand. Because the purpose of retaining jurisdiction through the court's October 2006 order was to allow POLO to challenge the new Appeals Board decision after the administrative record was completed, the more logical reading of the October 2006 order was that it expired on its own terms after the claims in the First Amended Complaint were litigated. Indeed, the order itself states that jurisdiction was retained only until "the Court otherwise orders." ER:448. The court's summary judgment decision "otherwise order[ed]" the matter remanded to the Appeals Board, as the district court correctly observed (ER:10), without any further reservation of district-court jurisdiction.

But even if, at the time of the entry of summary judgment, the district court intended to retain jurisdiction after the Appeals Board completed the remand, the court did not abuse its discretion in later terminating the lawsuit and requiring POLO, if it wishes to challenge the new Appeals Board decision, to file a new civil action. POLO sought

41

"summary adjudication" of the new Appeals Board decision based solely on the arguments advanced in its district-court briefs, without requesting leave to file a supplemental pleading. ER:6. However, a district court need not consider claims that were never pleaded. *See 389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) (upholding the district court's failure to consider claims that were initially raised in opposition to summary judgment); *Insur. Co. of N. Am.*, 783 F.2d at 1328 (district court did not err by refusing to award relief on an unpleaded cause of action).

Parties may, of course, litigate an unpleaded claim if they consent to doing so, in which case the Federal Rules of Civil Procedure provide that the issue, whether "tried by the parties' express or implied consent[,] must be treated in all respects as if raised in the pleadings." Fed. R. Civ. P. 15(b)(2). But there was no consent here, as demonstrated by the government's vigorous opposition to POLO's attempts to reopen litigation in the case and to challenge the new Appeals Board decision without obtaining leave to file a supplemental pleading.[10]

---

[10] POLO provides no explanation whatsoever for why it has chosen not to file a motion for leave to submit a supplemental pleading challenging the new Board decision. Indeed, although POLO stated at

Even if the legal arguments in POLO's post-remand court filings could reasonably be construed as a request for leave to make such a filing (which they cannot be), the district court's termination of the case was not an abuse of discretion. That is so because, as we already discussed, assuming it can satisfy the prerequisites for Article III jurisdiction, POLO may challenge the Appeals Board's decision (and, by implication, the Bureau's) by commencing a new civil action. *Cf. Planned Parenthood of S. Ariz.*, 130 F.3d at 403 (upholding rejection of supplemental complaint filed after the conclusion of litigation); Wright, Miller & Kane, *supra*, at 281-82.

POLO makes several assertions that have little to do with the real issue of whether the district court should have resolved POLO's unpleaded challenges to the new Appeals Board decision. First, it contends that the summary judgment order's finality is undercut by the government's participation in further district-court litigation for a year after the order was entered. Br. 27 (citing ER:464-68). But that litigation concerned the issue of attorneys' fees—an ancillary matter that is routinely resolved after a case is over and judgment has been

one point that it "anticipate[d]" seeking leave to file a supplemental or amended complaint (ER:230), it never filed any such motion.

43

entered. As the Supreme Court has explained, "even years after the entry of a judgment on the merits a federal court could consider an award of counsel fees." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) (internal quotation marks omitted). This Court has likewise held that a district court's "ancillary jurisdiction [to adjudicate fee awards] exists even after the underlying litigation has concluded." *K.C. ex rel. Erica C. v. Torlakson*, 762 F.3d 963, 968 (9th Cir. 2014). That the parties engaged in litigation over fees is not proof that the summary judgment order was not final.

POLO points out (Br. 32) that there is some authority allowing fees at interim stages of the litigation, including remands. But that does not affect the fact that POLO's motion for attorneys' fees expressly stated that it already considered the summary judgment order to have ripened into a final judgment, as the district court correctly recognized. ER:9-10 n.6. Specifically, POLO's attorneys' fees motion stated that "the [July 9, 2008] Order became final," at least for purposes of the fee-shifting statute, "on January 8, 2009," when the government dismissed its appeal. SER:6. The district court therefore reasonably relied on those statements as evidence of POLO's true view of the summary

44

judgment order's finality. POLO's arguments about judicial estoppel (Br. 33-34) are beside the point, because that was not the basis of the court's order. *See* ER:9 n.6 (noting that "[b]ut for" the question of whether the court relied on POLO's statements, the court "could find" judicial estoppel, but did not).

IV.   *The Court should not address POLO's remaining arguments.*

POLO devotes the remainder of its brief (at 35-54) to discussing why it believes the new Appeals Board decision and the Bureau's land-into-trust decision are unlawful. But the district court did not reach those arguments, and nor should this Court. Where an argument was neither ruled on by the district court nor fully briefed on appeal, "it is normally inappropriate for [this Court] to evaluate the argument in the first instance." *Shirk v. U.S. ex rel. Dep't of Interior*, 773 F.3d 999, 1007 (9th Cir. 2014) (citation omitted). That practice is rooted in the "general assumption" that this Court "operate[s] more effectively as a reviewing court than as a court of first instance." *Detrich v. Ryan,* 740 F.3d 1237, 1248-49 (9th Cir. 2013) (en banc); *see Haskell v. Harris*, 745 F.3d 1269, 1271 (9th Cir. 2014) ("[W]e are a court of review, not first view.").

The arguments about the new Appeals Board decision were not the subject of any of POLO's pleadings. As already discussed, the district court did not abuse its discretion by failing to address those unpleaded contentions. *See 389 Orange St. Partners*, 179 F.3d at 665; *Insur. Co. of N. Am.*, 783 F.2d at 1328. If the Court disagrees, the district court should be allowed to address the arguments in the first instance. As for the purported challenge to the Bureau's land-into-trust decision, we have already demonstrated that POLO may not challenge the Bureau's decision other than by challenging the new Appeals Board decision. POLO's confusion about that fundamental principle of APA review cannot enable POLO to circumvent the ordinary requirements of administrative law and obtain *de novo* review of the Bureau's decision as if the Appeals Board did not matter, much less by this Court in the first instance.

* * *

In sum, this Court lacks jurisdiction over the appeal—the only claims in the operative pleading before the district court concern an agency decision that has been superseded by a new decision. Further review of the old Appeals Board decision would be pointless—claims challenging that decision are moot. Additionally, POLO's challenge to the Bureau's land-into-trust decision is improper because that decision is not final. And while the new Appeals Board decision is final, POLO never challenged that decision through any properly pleaded claim. But assuming it could meet the ordinary Article III prerequisites to suit, POLO could bring such a challenge through a new lawsuit. Thus, POLO is neither aggrieved for the purposes of having a right to appeal, nor did the district court abuse its discretion in refusing to reopen the case.

47

CONCLUSION

The appeal should be dismissed. Alternatively, the district court's

orders should be affirmed.

Respectfully submitted,

JOHN C. CRUDEN
 Assistant Attorney General
 Environment & Natural Res. Div.

*Of Counsel:*                          *s/ Brian C. Toth*
JENNIFER TURNER            JUDITH RABINOWITZ
REBECCA ROSS                 BRIAN C. TOTH
 U.S. Department of the Interior    Attorneys
 Office of the Solicitor               Environment & Natural Res. Div.
 Washington, DC                     U.S. Department of Justice
                                              P.O. Box 7415
                                              Washington, DC 20044
                                              (202) 305-0639
                                              brian.toth@usdoj.gov

December 2015                     Attorneys for Defendants-Appellees
90-6-24-00943                       U.S. Dep't of the Interior, *et al.*

STATEMENT OF RELATED CASES

The undersigned is not aware of any related cases within the meaning of Ninth Circuit Rule 28-2.6.

*s/ Brian C. Toth*
BRIAN C. TOTH
U.S. Department of Justice
Environment and Natural
Resources Division
Appellate Section
P.O. Box 7415
Washington, D.C. 20044
(202) 305-0639

Attorney for Defendants-Appellees
U.S. Dep't of the Interior, *et al.*

CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed.

R. App. P. 32(a)(7)(B) because this brief contains 9,445 words, excluding

the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R.

App. P. 32(a)(5) and the type style requirements of Fed. R. App. P.

32(a)(6) because the brief has been prepared in a proportionally spaced

typeface using Microsoft Office Word 2013 in 14-point Century

Schoolbook.


    *s/ Brian C. Toth*
BRIAN C. TOTH
U.S. Department of Justice
Environment and Natural
 Resources Division
Appellate Section
P.O. Box 7415
Washington, D.C. 20044
(202) 305-0639

Attorney for Defendants-Appellees
U.S. Dep't of the Interior, *et al.*

CERTIFICATE OF SERVICE

On December 22, 2015, I filed the foregoing with the Clerk of the

Court for the United States Court of Appeals for the Ninth Circuit by

using the electronic case filing system, which will serve electronic notice

of the filing on all registered users of that system.


      *s/ Brian C. Toth*
     BRIAN C. TOTH
     U.S. Department of Justice
     Environment and Natural
      Resources Division
     Appellate Section
     P.O. Box 7415
     Washington, D.C. 20044
     (202) 305-0639

     Attorney for Defendants-Appellees
     U.S. Dep't of the Interior, *et al.*